[No. B116873. Second Dist., Div. Five. May 12, 1999.]

JAMES CLIFFORD BRUNSON et al., Plaintiffs and Respondents, v. DEPARTMENT OF MOTOR VEHICLES et al., Defendants and Appellants.

COUNSEL

Daniel E. Lungren and Bill Lockyer, Attorneys General, Martin H. Milas, Assistant Attorney General, Silvia M. Diaz and Angela Sierra, Deputy Attorneys General, for Defendants and Appellants.

James Clifford Brunson and Paul Villandry, in pro. per., for Plaintiffs and Respondents.

Ross S. Heckmann for Plaintiffs and Respondents Steven Jones and Leo Guglielmo.

No appearance for Plaintiff and Respondent Michael Bromley.

## OPINION

**ARMSTRONG, J.**—In this second appeal of this matter, the Department of Motor Vehicles (DMV) again appeals the judgment granting a petition for writ of mandate which prohibits the DMV from requiring petitioners to provide their Social Security numbers in order to obtain new or renewed

drivers' licenses and/or DMV identification cards. We again reverse the judgment.

1. *First Amendment*

As we explained in our prior opinion, petitioners filed a petition for writ of mandate against the DMV, seeking to enjoin the DMV from refusing to accept petitioners' applications for new and renewed drivers' licenses and DMV identification cards due to petitioners' failure to provide their Social Security numbers on the DMV application, as required by law. (Veh. Code §§ 1653.5, 12800.) Petitioners, members of the March of Ide's Foundation, objected to providing their Social Security numbers on religious grounds. Specifically, petitioners alleged that the acquisition of a Social Security number or the use of such a number for any purpose other than the administration of Social Security would endanger their chances of being chosen for life after death and that, most probably, acquisition of such a number would condemn the recipient to death. As they explained in the petition for writ of mandate, "The most fundamental and primary source upon which petitioners' beliefs are predicated is the Bible. More particularly, New Testament, Book of Revelations, Chapter 13. The biblical passages to which petitioners refer, as well as, other literature, upon which petitioners['] beliefs, evolve, speak to the existence of an eminent conflict, between God and state. This conflict, through scripture interpretation, has resulted in the belief by petitioners and others of their class, that an omnipowerful state will usurp the place of God on earth, and destroy those who will not make obeisance and tribute to the state."

The trial court granted the petition. It assumed for purposes of the hearing that' petitioners' beliefs were religious in nature, and sincerely held, and concluded: "I think there [are] other ways" to effect the goals of the statute. This court reversed that holding: "unless and until a factual finding has been made on the threshold question of the sincerity of petitioners' beliefs and the religious nature of those beliefs, there is no need to balance the interests of the petitioners in the free exercise of their religion against the governmental interest in the challenged policy or statute. (See, e.g., *Leahy* v. *District of Columbia* [(D.C. Cir. 1987)] 833 F.2d 1046, 1049; *Stevens* v. *Berger* [(E.D.N.Y. 1977)] 428 F.Supp. 896, 905-906.)" (*Brunson* v. *Department of Motor Vehicles* (Dec. 30, 1990) B092589 [nonpub. opn.].) We remanded the matter to the trial court for a determination of the factual issues presented in the petition.

On remand, no oral testimony was taken; the trial court relied exclusively on the written declarations of the petitioners. The court concluded that

petitioners' beliefs were religious in nature and sincerely held. The court further held that the DMV had "provided no evidence on which this court can make a determination that providing a social security number is the only or most effective way to obtain information that will be useful in the enforcement of child support laws. As such the burden on petitioners far outweighs any inconvenience to [the DMV]." In so ruling, the trial court erred in applying the "compelling state interest" test to petitioners' free exercise of religion challenge.

In *City of Boerne* v. *Flores* (1997) 521 U.S. 507 [117 S.Ct. 2157, 138 L.Ed.2d 624], the United States Supreme Court declared that the Religious Freedom Restoration Act (RFRA), under which petitioners sought relief, was unconstitutional. The court explicitly reestablished its holding in *Employment Div., Ore. Dept. of Human Res.* v. *Smith* (1990) 494 U.S. 872 [110 S.Ct. 1595, 108 L.Ed.2d 876] (*Smith*), which repudiated application of the compelling state interest test to evaluate neutral laws of general applicability.

The *Smith* court considered a free exercise claim brought by members of the Native American Church, who were denied unemployment benefits when they lost their drug counseling jobs because they had used peyote. Because their peyote use was for sacramental purposes, they challenged the Oregon penal statute which criminalized use of the drug. In rejecting application of the balancing which has become known as the compelling state interest test, the court stated: "[G]overnment's ability to enforce generally applicable prohibitions of socially harmful conduct . . . 'cannot depend on measuring the effects of a governmental action on a religious objector's spiritual development.' . . . To make an individual's obligation to obey such a law contingent upon the law's coincidence with his religious beliefs, except where the State's interest is 'compelling' . . . contradicts both constitutional tradition and common sense." (*Smith, supra,* 494 U.S. at p. 885 [110 S.Ct. at p. 1603].)

In *Bowen* v. *Roy* (1986) 476 U.S. 693 [106 S.Ct. 2147, 90 L.Ed.2d 735], a Native American family objected to the requirement that, in order to obtain AFDC (Aid to Families With Dependent Children) benefits for their child, they had to provide the child's Social Security number. The family contended that the use of that number to identify the child would violate their Native American religion by stealing the child's identity. Rejecting this free exercise clause challenge, the *Bowen* court explained: "The statutory requirement that applicants provide a Social Security number is wholly neutral in religious terms and uniformly applicable. There is no claim that there is any attempt by Congress to discriminate invidiously or any covert suppression of particular religious beliefs. The administrative requirement does not create

any danger of censorship or place a direct condition or burden on the dissemination of religious views. It does not intrude on the organization of a religious institution or school. It may indeed confront some applicants for benefits with choices, but in no sense does it affirmatively compel appellees, by threat of sanctions, to refrain from religiously motivated conduct or to engage in conduct that they find objectionable for religious reasons." (*Bowen v. Roy, supra*, 476 U.S. at p. 703 [106 S.Ct. at pp. 2153-2154], fns. omitted.) ■ Thus, the test to be applied in cases of neutral laws of general application is the rational basis test, i.e., whether a "challenged requirement for governmental benefits, neutral and uniform in its application, is a reasonable means of promoting a legitimate public interest." (*Bowen v. Roy, supra*, at p. 708 [106 S.Ct. at p. 2156].) Or, as the California Supreme Court articulated the test in *Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1101 [40 Cal.Rptr.2d 402, 892 P.2d 1145]: "If there is any rational relationship between the purpose of the statute or ordinance and a legitimate government objective, the law must be upheld."

The Vehicle Code section mandating the provision of an applicant's Social Security number meets the rational basis test: it is a religion-neutral law of general applicability. Thus, although it may incidentally burden petitioners' religious practices, it does not offend the First Amendment's free exercise clause so long as it is a rational means of achieving a legitimate governmental end.

### 2. California Constitution

Petitioners implicitly acknowledge that, as a result of the United States Supreme Court decision in *City of Boerne v. Flores*, their federal constitutional claim cannot prevail. They contend, however, that the California Constitution provides a separate basis for upholding the trial court order.

Our Supreme Court discussed the interplay between the federal and California free exercise clauses in *Smith v. Fair Employment & Housing Com.* (1996) 12 Cal.4th 1143 [51 Cal.Rptr.2d 700, 913 P.2d 909]. The court there said:

"California courts have typically construed the provision to afford the same protection for religious exercise as the federal Constitution before *Employment Div., Ore. Dept. of Human Res. v. Smith, supra*, 494 U.S. 872 [110 S.Ct. 1595, 108 L.Ed.2d 876]. Indeed, our more recent cases treat the state and federal free exercise clauses as interchangeable and apply, to both, the compelling state interest test articulated in *Sherbert v. Verner* [(1963)] 374 U.S. 398 [83 S.Ct. 1790, 10 L.Ed.2d 965], and *Wisconsin v. Yoder* [(1972)] 406 U.S. 205 [92 S.Ct. 1526, 32 L.Ed.2d 15]. [Citations.]

". . . . . . . . . . . . . . . . . . .

"Older cases, however, suggest an approach closer to that of the United States Supreme Court in *Employment Div., Ore. Dept. of Human Res.* v. *Smith, supra,* . . .

". . . . . . . . . . . . . . . . . . . . . .

"That the state Constitution's free exercise clause is more protective of religious exercise than the federal Constitution's has also been suggested. No court, however, has articulated a test more protective than the test set out in *Sherbert* v. *Verner, supra,* . . . and *Wisconsin* v. *Yoder, supra,* . . . and now codified in RFRA. Because Smith's claim fails even under that test, as explained above, we need not address the scope and proper interpretation of California Constitution, article I, section 4. . . ." (*Smith* v. *Fair Employment & Housing Com., supra,* 12 Cal.4th at pp. 1177-1179, fn. omitted.)

From the foregoing statement from the plurality opinion in *Smith* v. *Fair Employment & Housing Com., supra,* 12 Cal.4th 1143, petitioners conclude that, "in applying the California free exercise clause to the facts of this case, this Court remains under a mandatory duty to follow the most recent line of cases, which applied the compelling state interest test of *Sherbert* v. *Verner,* rather than following the older line of cases, which paralleled the U.S. Supreme Court's *Employment Division* v. *Smith* decision." We disagree.

The California Supreme Court has never applied the free exercise clause of the California Constitution independent of a federal free exercise claim. Consequently, no California Supreme Court case has ever articulated a standard applicable to the free exercise clause of the California Constitution different from that applicable to the free exercise clause of the United States Constitution. To the contrary, the California high court stated just three years ago that "our more recent cases treat the state and federal free exercise clauses as interchangeable . . . ." (*Smith* v. *Fair Employment & Housing Com., supra,* 12 Cal.4th at p. 1177.) Consequently, we are compelled to apply the rationale basis test applicable to the federal free exercise claim to petitioners' claim that the Vehicle Code provision in question violates their free exercise rights under the California Constitution. As noted above, the statute at issue here survives scrutiny under that standard.

### 3. *Other Bases for Relief*

Petitioners Steven Jones and Leo Guglielmo also maintain that the requirement that they disclose their Social Security numbers to the DMV constitutes "coerced speech" in violation of the free speech clause of the First Amendment. This claim, however, was not pled in the petition for writ

of mandate; the theory was not developed at trial, and the trial court was not asked to, and did not, rule on it. We will not entertain a new legal theory presented for the first time on appeal. (*Dunn* v. *Dunn* (1960) 180 Cal.App.2d 839, 842 [4 Cal.Rptr. 748] [" 'It is elementary that questions not raised in the trial court will not be considered on appeal.' "].)

Similarly, petitioner James Clifford Brunson argues that the DMV's acquisition, use and dissemination of Social Security numbers violates "the Federal Privacy Act of 1974, Section 7.(A)(1), the California Privacy Act and the United States Constitution, Fourth Amendment." The petition for writ of mandate mentions the "Privacy Act of 1974, Section 1.(a)(1)"; it does not mention either "the California Privacy Act" or the Fourth Amendment to the United States Constitution. Again, none of these theories were presented to the trial court. Consequently, we will not consider them in the first instance on appeal.

### DISPOSITION

The judgment is reversed and the petition is dismissed. Each party to bear its own costs of appeal.

Turner, P. J., and Grignon, J., concurred.

A petition for a rehearing was denied June 11, 1999, and respondents' petitions for review by the Supreme Court were denied August 18, 1999. Mosk, J., Kennard, J., and Brown, J., were of the opinion that the petitions should be granted.